# REISMAN ▪ CAROLLA ▪ GRAN LLP

*19 Chestnut Street*
*Haddonfield, NJ 08033*
*P: 856.354.0021*
*F: 856.873.5640*
*www.rcglawoffices.com*

*Catherine Merino Reisman*★
*Amelia Carolla*★
*Judith A. Gran*★★
*Sarah E. Zuba*★

*★Admitted in NJ & PA*
*★★Admitted in PA*

*catherine@rcglawoffices.com*
*Direct dial:  856.354.0071*

July 13, 2016

*Via ECF*

The Honorable Renée Marie Bumb
United States District Court for the District of New Jersey
4th & Cooper Streets
Camden, New Jersey 08101

Re:   *Cinnaminson Township Bd. of Educ. v. K.L. o/b/o R.L.*
       Civil Action No. 1:16-cv-03586-RMB-KMW

Dear Judge Bumb:

Kindly except this letter brief in lieu of a more formal memorandum in opposition to the Cross-Motion to Dismiss Defendants' Counterclaim or, In the Alternative, For an Injunction Barring Enforcement of the June 16, 2016 Order of the New Jersey Office of Administrative Law, Dkt. No. 12-2, filed by plaintiff-counterclaim defendant Cinnaminson Township Board of Education ("Cinnaminson" or "the District"), and in further support of K.L.'s Motion for Preliminary Injunction Requiring Plaintiff-Counterclaim Defendant to Comply with Judge Ascione's June 6, 2016 Order. Dkt. No. 4.

On June 6, 2016, Judge Ascione issued an order requiring that Cinnaminson pay for R.L.'s placement at The Quaker School at Horsham ("The Quaker School") pending administrative review of the District's proposal to change her placement to an in-District classroom. *Verified Complaint of Cinnaminson Township Bd. of Education* ("*Bd. Verified*

REISMAN CAROLLA GRAN LLP

The Honorable Renée Marie Bumb
July 13, 2016
Page 2

_____

*Compl.*") at ¶ 24, Dkt. No. 1-7 at 9, and Exhibit D, Dkt. No. 1-7 at 52-61 ("*ALJ Decision*"). K.L.,

on behalf of R.L., seeks to enforce that Order and the District seeks to stay its effect.

      In violation of federal and state law, Cinnaminson failed to offer any programming at all

to a student with multiple disabilities when she moved into the District. This court should decline

Cinnaminson's request for ratification of its neglect with respect to R.L.'s educational needs.

**I.   STANDARDS OF REVIEW**

      **A.   Standard of Review for Cinnaminson's Motion to Dismiss**

      In analyzing the District's motion to dismiss, this Court must "accept all factual

allegations as true, construe the complaint in the light most favorable to [K.L. and R.L.], and

determine whether, under any reasonable reading of the [counterclaim, K.L. and R.L.] may be

entitled to relief." *Doe v. Hesketh*, 2016 *U.S. App. LEXIS* 12368, at *16 (3d Cir. July 5, 2016).

"At this stage, the court does not determine whether the non-moving party will prevail, but

whether it will be permitted to offer evidence in support of the claims in the complaint." *R.B. V.*

*Mastery Charter Sch.,* 762 *F. Supp.2d* 745, 753 (E.D. Pa. 2010) (denying charter school's motion

to dismiss claim for stay put injunction), aff'd 532 *F. App'x* 136 (3d Cir. 2013), *cert. denied,* 134

*S. Ct.* 1280 (2014).

      **B.   Standard of Review of ALJ Ascione's Decision and Order**

      Cinnaminson seeks reversal of a decision of an administrative law judge in a special

education matter. The standard of review in an IDEA case is well-settled:

REISMAN CAROLLA GRAN LLP

The Honorable Renée Marie Bumb
July 13, 2016
Page 3

---

> When considering an appeal from a state administrative decision under
> the IDEA,   courts apply a nontraditional standard of review, sometimes
> referred to as "modified *de novo*" review. *See P.P. v. West Chester Area
> Sch. Dist.*, 585 *F*.3d 727, 734 (3d Cir. 2009) (quoting *S.H. v. State-
> Operated Sch. Dist. of Newark*, 336 *F*.3d 260, 269-70 (3d Cir. 2003)).
> Under this standard, a district court must give "due weight" and deference
> to the findings in the administrative proceedings. *Id*. (citing *Rowley*, 458
> *U.S.* at 206). "'Factual findings from the administrative proceedings are
> to be considered *prima facie* correct,' and if the reviewing court does not
> adhere to those findings, it is 'obliged to explain why.'" *Id*. (quoting
> *State-Operated Sch. Dist. of Newark*, 336 *F*.3d at 270). The "due weight"
> obligation prevents district courts from imposing their own view of
> preferable educational methods on the states. *Oberti v. Bd. of Educ.*, 995
> *F*.2d 1204, 1219 (3d Cir. 1993) (citing *Rowley*, 458 *U.S.* at 207).

*D.S. v. Bayonne Bd. of Educ.*, 602 *F*.3d 553, 564 (3d Cir. 2010); *see also Upper

Freehold Reg'l Bd. of Educ. v. T.W.*, 496 *F. App'x* 238, 242 (3d Cir. 2012). Although

federal courts "give 'special weight' to an ALJ's credibility determinations from live

testimony, [they] apply the modified *de novo* standard to all factual findings made by the

ALJ." *J.F. v. Byram Twp. Bd. of Educ.*, 629 *F. App'x* 235, 236 n.1 (3d Cir. 2015).

### C.  Standard of Review for Cinnaminson's Motion for Relief from Judge Ascione's June 6, 2016 Order

"[T]he expressed policy of § 1415(j) weighs so heavily in favor of leaving a Hearing

Officer's decision undisturbed and maintaining the status quo, even in the absence of a

meritorious argument on the part of the child's parents, that the party moving to enjoin a stay-put

order must satisfy the elements for preliminary injunctive relief." *Abington Heights Sch. Dist. v.

A.C.*, 2014 U.S. Dist. LEXIS 61487, at *14 (M.D. Pa. May 2, 2014). A school district

challenging a "stay put" order "must meet the traditional elements for a preliminary injunction.

REISMAN CAROLLA GRAN LLP

The Honorable Renée Marie Bumb
July 13, 2016
Page 4

---

Specifically, the school district must establish that (1) it is likely to succeed on the merits; (2)

denial will result in irreparable harm to the district; (3) granting preliminary relief will not result

in even greater harm to the non-moving party . . .; and (4) granting the injunction is in the public

interest." *Id.* at *17-*18; *see also Willington Bd. of Educ. v. G.W.*, 2015 *U.S. Dist. LEXIS* 92108,

at *28 (D. Conn. June 15, 2015). The moving party must establish all elements to succeed on a

request for relief. *Id.*

## II.  STATEMENT OF FACTS

1.    R.L., currently twelve years old, is eligible for special education with an

eligibility category of  "multiply disabled." *Verified Complaint of Cinnaminson*

*Township Bd. of Education* ("  *Compl.*") at ¶ 1, Dkt. No. 1 at 1.

2.     "R.L. has a highly involved medical history. She is diagnosed with a seizure

disorder (epilepsy), Landau Kleffner Syndrome, ADHD, behavior disorder,

feeding disorder, possible obsessive compulsive disorder and autism spectrum

disorder, along with medical problems including platelet dysfunction, reflux,

osteopenia and gastroesophageal reflux. She is prescribed a number of

medications and is on a ketogenic diet." Exhibit B to *Bd. Verified Compl.*, Berlin

IEP, at 26, Dkt. No. 1-7 at 38.

3.    Prior to R.L.'s re-location to Cinnaminson, Berlin Borough Board of Education

("Berlin") issued an Individualized Educational Program ("IEP") placing R.L. at

The Quaker School. *Bd. Verified Compl.*, Exhibit B, Dkt. No. 1-7 at 13-40.

REISMAN CAROLLA GRAN LLP

The Honorable Renée Marie Bumb
July 13, 2016
Page 5

---

4.      On October 31, 2014, K.L. registered R.L. as a student in Cinnaminson and

provided the District with a copy of the Berlin IEP. *Bd. Verified Compl.* at ¶ 11,

Dkt. No. 1 at 5; *Counterclaim* at ¶ 12, Dkt. No. 3 at 12.

5.      On October 31, 2014, K.L. provided authorization for Cinnaminson to get R.L.'s

records from Berlin. *Counterclaim* at ¶ 13, Dkt. No. 3 at 13.

6.      The District did not propose a program and placement for R.L. within 30 days of

the date she enrolled. *Counterclaim* at ¶ 14, Dkt. No. 3 at 12; *Answer to*

*Counterclaim* at ¶ 14, Dkt. No. 12 at 3.

7.      As of December 15, 2014, forty-five days after enrollment, Cinnaminson had not

proposed a program and placement for R.L. and K.L. filed for due process, in an

action docketed at No. EDS 16816-2014S. *Counterclaim* at ¶ 15, Dkt. No. 3 at 12.

8.      The parties settled the matter docketed at No. EDS 16816-2014S. *Bd. Verified*

*Compl.* at Exhibit C, Dkt. No. 1-7 at 41-50.

9.      In the settlement of No. EDS 16816-2014S, the parties agreed:

> In the event of a dispute between the Parties concerning the
> appropriateness of R.L.'s educational program or placement for any period
> of time subsequent to the term of this Agreement, it is expressly
> understood that this Agreement does not establish the last agreed-upon
> placement for the purposes of the "freeze" or "stay-put" provision of the
> IDEA, 20 *U.S.C.A.* § 1415(j). <u>In the event of such a dispute, both parties
> expressly reserve all rights and remedies on the issue of stay-put, which
> they have or may have had as of the time Petitioners filed for emergent
> relief in the above-captioned action.</u>

*Bd. Verified Compl.*, Exhibit C at ¶ 16, Dkt. No. 1-7 at 48.

REISMAN CAROLLA GRAN LLP

The Honorable Renée Marie Bumb
July 13, 2016
Page 6

10.    On June 3, 2015, Cinnaminson proposed an IEP for R.L. for the 2015-2016
school year. K.L. disagreed with the proposal and filed a due process petition
within fifteen days. *Bd. Verified Compl.* at ¶¶ 13, 14, Dkt. No. 1 at 6.

11.    Cinnaminson proposed a change in placement to an elementary school in
Cinnaminson for extended school year ("ESY") 2015 and Cinnaminson Middle
School for the 2015-2016 school year. *Counterclaim* at ¶ 16, Dkt. No. 3 at 13.

12.    Notwithstanding the fact that the IDEA regulations require resolution within 45
days of filing, the due process petition challenging the Cinnaminson IEP remains
unresolved. *Bd. Verified Compl.* at ¶ 15, Dkt. No. 1 at 6.

13.    The first two days of hearing were May 23 and June 13, 2016. Judge Ascione
scheduled additional dates for July 20, August 3, and August 15, 2016. *Bd.
Verified Compl.* at ¶ 18 & n.1, Dkt. No. 1 at 7.

14.    On or about February 26, 2016, K.L. filed a motion seeking funding of the
placement at The Quaker School pending the outcome of the due process hearing.
*Bd. Verified Compl.* at ¶ 19, Dkt. No. 1 at 7-8.

15.    On June 6, 2016, Judge Ascione ruled in favor of R.L. and ordered the District to
reimburse K.L. for the costs of tuition and transportation for R.L.'s placement at
The Quaker School for the 2015 ESY and the 2015-2016 school year. In addition,
he ordered Cinnaminson to arrange continued financial support of the placement

REISMAN CAROLLA GRAN LLP

The Honorable Renée Marie Bumb
July 13, 2016
Page 7

---

pending the Final Decision of this matter. *Bd. Verified Compl.* at ¶ 24 & Exhibit
D, Dkt. No. 1 at 9 & Dkt. No. 1-7 at 52 ("*ALJ Decision*").

16.     In deciding in R.L.'s favor, Judge Ascione made the following factual findings:

- R.L. has attended The Quaker School since February 2014. *ALJ
  Decision*, at 2, Exhibit D to *Bd. Verified Compl.*, Dkt. No. 1-7 at
  53.

- In settlement of litigation between the Berlin Borough Board of
  Education and K.L., Berlin issued an IEP placing R.L. at The
  Quaker School and paid tuition directly to the school. *Id.* at 3, Dkt.
  No. 1-7 at 54.

- "K.L. did not unilaterally place R.L. at The Quaker School.
  Instead, R.L. was placed at The Quaker School pursuant to an
  agreement between Berlin and K.L." *Id.* at 9. Dkt. No.1-7 at 60.

- "In this matter, R.L.'s last functional IEP places her at The Quaker
  School, not in the public school district." *Id.*

- "The settlement agreement with [Cinnaminson] from February 25,
  2015 stated that, in the event of a dispute about upcoming IEP's
  both parties reserve their rights on the issue of stay put as they
  would have had at the time K.L filed for emergent relief, which
  was December 15, 2014." *Id.* at 9-10, Dkt. No 1-7 at 60-61.

REISMAN CAROLLA GRAN LLP

The Honorable Renée Marie Bumb
July 13, 2016
Page 8

- "The Quaker School became R.L.'s appropriate pendent placement for stay put purposes on October 28, 2014. Therefore, The Quaker School was R.L.'s placement for stay put purposes on December 15, 2014." *Id.* at 10, Dkt. No. 1-7 at 61.

## III.  ARGUMENT

### A.  Cinnaminson Attempts to Rely Upon Factually Distinguishable Cases and Dismisses Factually Apt Decisions

The pertinent factual question here is "what was R.L.'s educational placement on December 15, 2014?"[1] Cinnaminson offers no reason for this Court to overturn Judge Ascione's factual finding that R.L.'s "then-current educational placement" in December, 2014 was The Quaker School, because a New Jersey educational agency had approved and agreed to R.L.'s placement at The Quaker School.

Instead, Cinnaminson repeatedly ignores this critical factual finding, referring to R.L.'s "unilateral placement" at The Quaker School. Cinnaminson concedes that the "dispositive factor in deciding a child's 'current educational placement' should be the [IEP] . . . actually functioning when the 'stay put' is invoked." *Dist. Letter Br.,* at 4, Dkt. No. 12-4 at 4 (quoting *Drinker by Drinker v. Colonial Sch. Dist.,* 78 *F.*3d 859 (3d Cir.

---

[1] In a settlement agreement in the spring of 2015, "both parties expressly reserve[d] all rights and remedies on the issue of stay-put, which they have or may have had as of the time Petitioners filed for emergent relief in the above-captioned action, Docket No. EDS 16816-2014S." Dkt. No. 1-7 at 48, ¶ 16 (Exhibit C to Verified Complaint). Cinnaminon admits that K.L. filed the action docketed at EDS 16816-2014S on December 15, 2014. *Answer to Verified Counterclaim,* at ¶ 15, Dkt. No. 12 at p.3. Thus, the relevant question is "what placement was Cinnaminson required to provide as of December 15, 2014."

REISMAN CAROLLA GRAN LLP

The Honorable Renée Marie Bumb
July 13, 2016
Page 9

---

1996)). Judge Ascione found, as a fact, that the Berlin IEP placing R.L. at The Quaker

School was the IEP actually functioning at the time stay put was invoked. Accordingly,

the "stay put" analysis must begin with the fact that a New Jersey educational agency

placed R.L. at The Quaker School prior to her move to Cinnaminson.[2] Cinnaminson's

disagreement with Berlin's placement of R.L. at The Quaker School does not render

Judge Ascione's decision erroneous.

In *Pardini v. Allegheny Intermediate Unit*, 420 *F.*3d 181 (2005), *cert. denied*,

547 *U.S.* 1050 (2006), the Third Circuit Court of Appeals rejected a school district's

contention that it need not respect a student's stay put placement established by 20

*U.S.C.* § 1415(j) when it disagreed with the prior local educational agency's program

choice. *Pardini* held that the Individualized Family Service Plan ("IFSP") that provided

for conductive education was the "stay put" program for Georgia Pardini when she

transitioned from early intervention to pre-school services. In *K.L. v. Berlin Borough Bd.*

*of Educ.*, 2013 U.S. Dist. LEXIS 111047, at *14-*15 (D.N.J. Aug. 7, 2013), this court

recognized *Pardini*'s holding: when a student transfers within a state with a program

approved by the original local educational agency ("LEA"), that student has stay put

rights under 20 *U.S.C.* § 1415(j). The *K.L.* court denied relief because the student "was

---

[2] Cinnaminson argues, "Importantly, the Administrative Law Judge who approved the settlement agreement expressly refused to determine that the Quaker School was appropriate, thereby depriving the agreement of "stay put" status because there was neither an agreement with respect to a future placement nor a judicial finding of appropriateness." Dkt. No. 12-4 at 5. However, there is no need for a judicial finding of appropriateness if an educational agency agreed to placement at and developed an IEP for the private school.

REISMAN CAROLLA GRAN LLP

The Honorable Renée Marie Bumb
July 13, 2016
Page 10

---

attempting to stay put in a unilateral placement in a private school which was never

approved by a state agency." *Id.* at *15.

   In contrast to *Pardini*, which is directly applicable to this case, *Michael C. v. Radnor

Twp. Sch. Dist.*, 202 *F.*3d 642 (3d Cir.), *cert. denied*, 531 U.S. 813 (2000), is completely

distinguishable. In *Michael C.*, the District of Columbia had agreed to a private school placement

at the LAB school. Parents then moved to Pennsylvania and placed their son at Hill Top, a

Pennsylvania private special education school. "Neither Washington educational authorities nor

Pennsylvania authorities played any role in this decision." *Id.* at 651. Because of the fact that

neither educational agency had approved Hill Top, Michael C. had no "stay put" placement at

Hill Top *Id.* In this case, by contrast, it is undisputed that Berlin issued an IEP placing R.L. at

Hill Top.

   The fact that R.L. moved into Cinnaminson with an IEP developed by a New Jersey

educational agency distinguishes the matter under consideration from *K.L. v. Berlin* as well as

*Michael C.* In the *Berlin* case, from September, 2010 through June, 2013, R.L. attended Orchard

Friends pursuant to an IEP created by the private school. Berlin never approved the Orchard

Friends IEP. *Id.* at *3. This court denied "stay put" funding of the placement at Orchard Friends

specifically because Berlin had never agreed to the private placement or developed a program for

that placement. *Id.* at *12.

   In this case, Judge Ascione therefore correctly concluded:

REISMAN CAROLLA GRAN LLP

The Honorable Renée Marie Bumb
July 13, 2016
Page 11

_____

> This circumstance is distinguishable from Berlin, because in Berlin R.L.'s
> last functional IEP placed her within the district, not at Orchard. However,
> in this matter, R.L.'s last functional IEP places her at TQSH, not in the
> public school district.

*ALJ Decision* at 9, Dkt. No. 1-7 at 60.

Cinnaminson's assertion that "R.L. has never attended school in 'an existing placement determined in accordance with state procedures'" flies in the face of Judge Ascione's factual finding that Berlin placed R.L. at The Quaker School in October, 2014. If one credits Judge Ascione's factual finding, then it does not matter whether or not Judge Delanoy declared the placement appropriate when he approved the settlement.

*Pardini* requires that a successor LEA recognize the "stay put" effect of a prior LEA's IEP. The only way the District can get around that binding authority is to repeatedly ignore Judge Ascione's finding that Berlin placed R.L. at The Quaker School at Horsham pursuant to state procedures. Nothing in the record supports reversal of that factual determination.

### B. Cinnaminson Violated the IDEA When it Refused to Implement the Berlin IEP, Did Not Offer Comparable Programming Until Developing a Cinnaminson IEP, and Did Not Develop a New IEP in a Timely Manner

Cinnaminson protests being forced to support a placement that was negotiated when the prior school district and the parent knew that she would be moving from the prior district. However, school districts are protected in those circumstances by a regulation that allows them to comply with the IDEA by providing "comparable" programming. *J.F. v. Byram Twp. Bd. of*

REISMAN CAROLLA GRAN LLP

The Honorable Renée Marie Bumb
July 13, 2016
Page 12

---

*Educ.*, 629 *F. App'x* 235 (3d Cir. 2015) clarifies Cinnaminson's recourse when faced with an IEP

negotiated by another LEA with which Cinnaminson disagrees.

Cinnaminson unsuccessfully attempts to dismiss *J.F.* because it is unpublished. However,

citation "to unpublished opinions is not only permitted under Federal Rule of Appellate

Procedure 32.1, . . . but is widely used."*Marracco v. Kuder*, 2009 U.S. Dist. LEXIS 6757, at *8

(D.N.J. Jan. 30, 2009). Consequently, "[e]ven though [*J.F.*] is an unpublished opinion and does

not have precedential authority, it is a Third Circuit opinion and, therefore, carries considerable

persuasive authority." *Id.*

In determining the obligations of a school district into which a student transfers with a

functioning IEP, *J.F.* relied upon 20 U.S.C. § 1414(d)(2)(C)(i)(I), which states:

> In the case of a child with a disability who transfers school districts within
> the same academic year, who enrolls in a new school, and who had an IEP
> that was in effect in the same State, the local educational agency shall
> provide such child with a free appropriate public education, including
> services comparable to those described in the previously held IEP, in
> consultation with the parents until such time as the local educational
> agency adopts the previously held IEP or develops, adopts, and
> implements a new IEP that is consistent with Federal and State law.

Thus, when R.L. transferred to Cinnaminson, the District *had to provide her with services*

*comparable to those described in the Berlin IEP until* it either adopted the previously

held IEP or developed, adopted and implemented a new IEP. New Jersey regulations

implementing the IDEA clarify that if the new school district does not "agree to

implement the current IEP, the district **shall** conduct all necessary assessments and,

REISMAN CAROLLA GRAN LLP

The Honorable Renée Marie Bumb
July 13, 2016
Page 13

---

within 30 days of the date the student enrolls in the district, develop and implement a new

IEP for the student." *N.J.A.C.* 6A:14-4.1(g) (emphasis supplied). Cinnaminson did not

meet this *mandatory* regulatory requirement. Instead, it offered no programming at all to

a student with numerous and significant disabilities.

 *Upper Freehold, supra,* compels rejection of Cinnaminson's attempt to

characterize the failure to offer any IEP at all to R.L. as a mere "procedural violation." In

*Upper Freehold*, the school district asserted that its failure to offer an IEP prior to the

beginning of the school year was only a procedural violation. The ALJ found that the

parents were justified in effecting a unilateral placement and seeking reimbursement after

they had reached an impasse. The district court reversed the ALJ, and the court of appeals

overruled the district court, finding that the parents were entitled to reimbursement.

 In *Upper Freehold*, the district court erred when it held that the parents' conduct

precluded reimbursement for the procedural violation of failing to offer a timely IEP.

Specifically, "the District Court erred when it abbreviated its analysis based on the

parents' conduct and failed to determine whether the District's proposed IEP was

appropriate. It should have considered the substance of the District's most recent

proposed IEP and determined if it met the IDEA's substantive requirements." 496 *F.*

*App'x* at 243-244. In this case, Cinnaminson is similarly urging that this court not even

consider whether it was substantively appropriate to offer *nothing* to R.L. within the

REISMAN CAROLLA GRAN LLP

The Honorable Renée Marie Bumb
July 13, 2016
Page 14

---

regulatory time frame. Offering no educational program at all to a student with significant

disabilities is not a "mere procedural violation," it is a substantive deprivation.

*Upper Freehold* also renders untenable the District's argument that it could

completely ignore the time frame for providing a new IEP when it was not providing

comparable programming. The court of appeals rejected the argument that the parents

could not effectuate a unilateral placement because the school district had designated the

last IEP offered as a "draft." "The IDEA does not permit school districts to hold parents

hostage merely by styling an IEP as a 'draft' subject to the possibility of revision,

however remote." *Id.* at 243 n.3. This is because school districts cannot unilaterally

dictate how long negotiations must continue by refusing to designate an offer as "final."

Likewise, in this case, Cinnaminson could not, because it did not like the manner in

which Berlin issued its IEP, unilaterally decide to neither adopt the Berlin IEP nor offer

an alternative IEP within the 30 day time frame nor offer comparable programming until

it developed its own IEP.

### C.  Cinnaminson Cannot Establish Entitlement to Injunctive Relief

Cinnaminson "has not made a strong showing that it will likely succeed in persuading the

Court to reverse the [ALJ]'s finding that the Board failed substantively in its obligation" to K.L.

when it did not offer any programming at all in December, 2014. *Willington*, 2015 U.S. Dist.

LEXIS 92108, at *27. There is nothing in the record before this court tending to establish that

Cinnaminson is likely to succeed on the merits of its claim that it was appropriate to simply do

REISMAN CAROLLA GRAN LLP

The Honorable Renée Marie Bumb
July 13, 2016
Page 15

---

nothing for 45 days. The IEP attached as Exhibit B to the Complaint details significant and

complicated educational needs. R.L. attended public school in Berlin in Kindergarten in 2009-

2010 and for a short time at the beginning of the 2010-2011 school year. *K.L. v. Berlin,* 2013

U.S. Dist. LEXIS 111047, at *2.[3] Concerned with R.L.'s progress in the public school, K.L.

effected a unilateral placement at a private school, as was her right under the IDEA. *Id.* at *3.

From September, 2010 to the present, she has been educated in private schools for students with

special education needs. Cinnaminson is not likely to prevail on the merits of its claim that it was

appropriate to offer R.L. *no program at all* when she transferred into the District.[4]

   With respect to irreparable harm, the only irreparable impact is that Cinnaminson will

have to fund a placement when it otherwise might not be liable. *Willington*, 2015 U.S. Dist.

LEXIS 92108, at *39. "The Third Circuit's strong emphasis on the policy considerations of the

stay-put provision suggests that once the stay-put order has been issued, the school has a

financial responsibility to maintain the status quo in the child's pendent placement.

Consequently, the District's financial and staffing concerns fail to establish any significant

burden on the district, let alone any irreparable harm." *Id.* at *31-*32; *see also Susquenita Sch.*

*Dist. v. Raelee*, 96 *F.*3d 78, 87 (3d Cir. 1996).

---

[3] The District's assertion that "R.L. has never attended a public school in the United States, let alone the State of
New Jersey," *Dist. Letter Br.*, Dkt. No. 12-4 at 7, is not true.
[4] The appropriateness of the June, 2015 IEP is wholly irrelevant. Because K.L. filed within 15 days of the proposed
IEP, R.L. was entitled to maintenance of her "stay put" placement, even if the June, 2015 offer was itself
appropriate. In any event, there is no evidence in this record justifying the conclusion that the June, 2015 IEP was
appropriate.

REISMAN CAROLLA GRAN LLP

The Honorable Renée Marie Bumb
July 13, 2016
Page 16

_____

Likewise, the balancing of harms does not favor Cinnaminson. The harm identified by

Cinnaminson is that it might be forced to fund a stay put placement when it had offered an

appropriate program in June, 2015. In *M.R. v. Ridley Sch. Dist.*, 744 *F.*3d 112 (3d Cir. 2014),

*cert. denied,* 135 S. Ct. 2309 (2015), the Third Circuit Court of Appeals held that a school

district's obligation to fund a stay put placement continued <u>*even after*</u> the district court

determined that Ridley had offered an appropriate program. The harm to the student in failing to

apply Section 1415(j)'s protective procedures outweighed the harm to the district in compelling

it to fund a placement through appellate proceedings. 744 *F.*3d at 126. In light of *M.R.,* the

District cannot possibly establish that the <u>*possibility*</u> that its decision to offer no programming in

December, 2014 was justified outweighs R.L.'s right to stability in educational programming. *Id.*

Finally, consideration of the public interest compels a decision in R.L.'s favor. The

record does not support Cinnaminson's argument that a ruling in R.L.'s favor will result in

incentives for parents not to cooperate. K.L. was entitled to negotiate the best possible IEP for

R.L. to present to a new LEA when she moved to Cinnaminson. She was not hiding from the

District – she registered R.L. as soon as she moved in. She signed permission for Cinnaminson to

get R.L.'s records from Berlin that same day. She didn't file on the 31st day – she waited for 45

days without any offer of a program and placement for her daughter with disabilities.

The general policy behind the IDEA "is to keep from disturbing the child throughout the

statutory process designed to resolve disputes between the school district and the child's parents

REISMAN CAROLLA GRAN LLP

The Honorable Renée Marie Bumb
July 13, 2016
Page 17

---

or guardians over where the child can receive the appropriate educational opportunities." *Id.* at

128. As the *M.R.* court noted:

> It is impossible, however, to protect a child's educational status quo without sometimes taxing school districts for private education costs that ultimately will be deemed unnecessary by a court. We see this not as "an absurd result," *Ridley II*, 2012 U.S. Dist. LEXIS 113600, but as an unavoidable consequence of the balance Congress struck to ensure stability for a vulnerable group of children.

*Id.*; *see also cf. E.C. v. Sch. Dist. of Philadelphia*, 2016 *U.S. App. LEXIS* 5068, at *7-*8 (3d Cir.

March 21, 2016) (financial strain on school district irrelevant in determining award of attorney's

fees). The IDEA "purposely 'does not create symmetrical obligations,' *Jenkins v. Squillacote*,

935 F.2d 303, 307 n.3, (D.C. Cir. 1991), and contemplates that state and local school boards,

with federal assistance, will bear the financial burden of implementing its provisions. The

IDEA's provisions represent a strong statement of public policy that students such as [R.L.]

should be shielded from the possibility of harm that might result from receiving an inadequate

education for any length of time, even during the period of time that litigation is ongoing."

*Willington*, 2015 U.S. Dist. LEXIS 92108, at *42-*43. Thus, public policy concerns weigh in

R.L.'s favor.

## IV.  CONCLUSION

Based upon the foregoing, defendant-counter plaintiff K.L. o/b/o R.L. respectfully

requests that this court deny the District's request for a stay of Judge Ascione's June 6, 2016

Order, deny the District's motion to dismiss K.L.'s Counterclaim, grant K.L.'s request for a

REISMAN CAROLLA GRAN LLP

The Honorable Renée Marie Bumb
July 13, 2016
Page 18

---

preliminary and permanent injunction requiring immediate compliance with that Order, and

award any other appropriate relief.


Respectfully submitted,


Catherine Merino Reisman

CMR/jq
cc:     Eric L. Harrison, Esquire (via ECF)
        K.L. (via email)

REISMAN CAROLLA GRAN LLP
Catherine Merino Reisman
Sarah E. Zuba
19 Chestnut Street
Haddonfield, New Jersey 08033
856.354.0021
856.873.5640 fax
catherine@rcglawoffices.com
sarah@rcglawoffices.com
Attorneys for Defendant K.L. o/b/o R.L.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| CINNAMINSON TOWNSHIP BOARD OF EDUCATION, <br><br> Plaintiff-Counterclaim Defendant, <br><br> v. <br><br> K.L. o/b/o R.L., <br><br> Defendant-Counterclaim Plaintiff. | Docket No. 1:16-cv-3586-RMB-KMW <br><br><br> **CERTIFICATE OF SERVICE** |

I, Catherine Merino Reisman, hereby certify that on this date I electronically filed the

following document, which is available for viewing and downloading from the ECF system.

- Letter Brief in opposition to the Cross-Motion to Dismiss Defendants' Counterclaim or, In the Alternative, For an Injunction Barring Enforcement of the June 16, 2016 Order of the New Jersey Office of Administrative Law, Dkt. No. 12-2, filed by plaintiff-counterclaim defendant Cinnaminson Township Board of Education ("Cinnaminson" or "the District"), and in further support of K.L.'s Motion for Preliminary Injunction Requiring Plaintiff-Counterclaim Defendant to Comply with Judge Ascione's June 6, 2016 Order. Dkt. No. 4

*/s/ Catherine Merino Reisman*
Catherine Merino Reisman